# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **VALERIA ELEICE MALLORY,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | CV-11-BE-990-S |
| ) | |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION, COMMISSIONER** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION

This case, alleging that Defendant, the Commissioner of the Social Security Administration, racially discriminated against and harassed the Plaintiff in violation of Title VII of the Civil Rights Act of 1964 as amended and 42 U.S.C. § 1981, is before the court on "Commissioner's Motion for Summary Judgment." (Doc. 24). For the reasons stated in this Memorandum Opinion, the court finds the motion is due to be GRANTED.

## I. PROCEDURAL BACKGROUND

The Plaintiff, Valeria Eleice Mallory, began her employment with Defendant, Social Security Administration Agency (SSA), in July 2006 and was terminated on March 28, 2008. Mallory timely sought Equal Employment Opportunity (EEO) counseling and filed a formal EEO complaint on May 1, 2008.

On January 20, 2010, the Administrative Judge (AJ) issued a decision without a hearing, finding Mallory did not establish a prima facie case of discrimination based on her race or color

1

because she was not similarly situated to her comparators. Specifically, the AJ found no evidence that the light-skinned black employees had job performance issues of the same magnitude as Mallory. Furthermore, the AJ found she was not similarly situated to a Hispanic employee who had significant performance difficulties because this employee was not hired under the Federal Career Intern Program (FCIP). In a Final Agency Decision (FAD) dated February 5, 2010, the SSA, without modification, adopted the AJ's January 20, 2010 decision.

On April 6, 2010, Mallory filed an appeal to the Office of Federal Operations (OFO), challenging the SSA's FAD. On August 26, 2010, the OFO issued a decision affirming the decision of the Agency. Mallory filed Request for Reconsideration, which the OFO denied on December 27, 2010.

On April 11, 2011, Mallory filed her complaint as a pro se plaintiff (Doc. 3) in the Northern District Court of Alabama. On March 12, 2012, this court granted Mallory leave to amend her complaint (Doc. 22) to raise a claim of discrimination based on color but dismissed her claims of racial harassment and discrimination. On March 30, 2012, Mallory timely filed an Amended Complaint alleging discrimination on the basis of color. (Doc. 23). On April 13, 2012, the Defendant filed a motion for summary judgment.

Mallory failed to timely filed a reply brief by the court's scheduled deadline of May 21, 2012. The court issued an Order to Show Cause on May 31, 2012, directing Mallory to show cause by June 12, 2012 as to why the court should not grant the Defendant's Motion for Summary Judgment. (Doc. 28). Mallory filed a response (Doc. 29) to the Order to Show Cause, which the court accepted, thus accepting Mallory's Response in Opposition to the Motion for Summary Judgment (Doc. 30) despite being three weeks past the original deadline. The

Defendant then filed a reply brief on June 27, 2012.

## II. FACTS

The court views the following facts in the light most favorable to Mallory. The court notes that it will take the facts as provided in the evidence submitted in their entirety.[1]

On July 24, 2006, Mallory, an African American of dark complexion, was appointed under the Federal Career Intern Program (FCIP) as a Benefit Authorizer (BA) trainee. (Doc 23, p. 1). After completing a period of classroom training, the SSA assigned Mallory to a module for on-the-job training in March 2007. (Doc. 23, pp. 1-2). Brenda McLeod, a white woman, was Mallory's first-line supervisor at the time the events occurred that gave rise to Mallory's complaint. (Doc. 23, p. 4). Sallie Shipley, a white woman, was Mallory's second-line supervisor at the time the events occurred that gave rise to Mallory's complaint.

Throughout Mallory's first three months of training, her case production and accuracy gradually improved. (Doc. 26-1, pp. 5, 9, 13). However, in March and April 2007, her mentor reported that, despite gradual improvements, Mallory was still making procedural errors and had difficulty understanding the reasoning behind what she was doing. (Doc. 26-1, pp. 5-6, 9-10). These issues continued, and on June 4, 2007, Ms. McLeod met with Mallory to discuss her progress, noting that Mallory was spending an excessive amount of time on the telephone. (Doc. 26-1, p. 15). In June 2007, Pam Hutcherson, Mallory's current mentor, reported Mallory to have

---

[1] Mallory, in her Response to the Defendant's Motion for Summary Judgment, often quotes pieces of phrases or single sentences out of entire paragraphs from emails and work review documents, leaving the unfavorable parts out of her characterizations of the facts. The court will not accept an incomplete version of facts or allow handpicked phrases to create a false mischaracterization. The court, however, does recognize that the Plaintiff is proceeding pro se and does not hold her submission to the same standard required of a lawyer.

shown improvement in her knowledge of the job. (Doc. 26-2, pp. 1-2; Doc. 26-1, pp. 17-18). After implementing a performance plan in June 2007, Ms. Hutcherson reported Mallory's steady improvement, but also noted Mallory was still making a significant number of errors in her work. (Doc. 26-2, pp. 1-2).

On August 15, 2007, Ms. Shipley noted that of all Mallory's cases, her mentor only returned one to her for release because she took the correct action. (Doc. 26-2, pp. 3-4). Ms. Shipley also informed Mallory of the several cases that been deleted from the system because she had not made corrections to them in a timely manner. *Id*.

To monitor Mallory's performance, Ms. Shipley put her under the direction of a new mentor, Mr. Andrew Peoples, in September 2007. (Doc. 26-2, pp. 5-6). Mallory was directed to leave all actions processed on Mr. Peoples' desk at the end of every day. *Id*. Ms. Shipley told Mallory that her work would be limited and reviewed daily by management to determine her progress. *Id.* At the end of September 2007, Mr. Peoples reported that Mallory's ability to learn and attitude were good, but she had less than average job knowledge. (Doc. 26-1, pp. 27-28). Mr. Peoples noted improvement in Mallory's work patterns and use of the work software and database systems, but also indicated a decline in quality and quantity of her work since the first of the month. *Id*.

During December 2007 and January 2008, Ms. Sue Reid, a Post Entitlement Technical Expert (PETE), mentored Mallory. (Doc. 26-1, pp. 44-47). Mallory's performance statistics for December 2007 showed improvement in accuracy and average daily case processing, but January 2008 indicated a decline in overall accuracy and payment accuracy. (Doc. 26-1, pp. 39, 44). During Ms. Reid's mentorship, she acknowledged that she usually controlled certain software

functions on behalf of Mallory. She advised Mallory to take these actions herself during a time when Ms. Reid was moving offices to prevent the cases from being purged from the system. Mallory did not take these actions, and several days of her work was purged. (Doc. 30, ¶ 11; Doc. 26-1, p. 52).

On February 5, 2008, Ms. McLeod requested to terminate Mallory from her position as a BA trainee. (Doc. 25, p. 2). While the request was pending review, Mallory asked for a transfer within the SSA to another position. Mallory's transfer was denied by Ms. Shipley, who issued a decision to terminate Mallory on March 28, 2008. *Id*.

Mallory offers Ms. Kinnya Hollings-Fisher, an African American woman of light complexion, as a comparator. (Doc. 23, p. 1). Ms. Hollings-Fisher began her training in May 2007 and struggled initially. (Doc. 26-3, p. 53). She was placed on a performance plan, similar to Mallory's, in September 2007. (Doc. 26-3, pp. 44-45, 48-50). In September 2007, Ms. Hutcherson reported that Ms. Hollings-Fisher was still making careless errors that affected her accuracy and overlooking critical information. (Doc. 26-3, pp. 35-36). Ms. Hollings-Fisher's performance statistics gradually increased during her training, and she received positive comments from her various mentors. (Doc. 26-3, pp. 29-47). Her numbers show a slight decline in the month of October 2007. *Id*. Ms. Shipley moved Ms. Hollings-Fisher to 50% review in January 2008, and removed her from review completely by March 2008. (Doc. 26-3, pp. 26, 22). In March 2008, she was promoted to a GS-9 level BA. (Doc. 26-3, pp. 1-3).

In her Second Amended Complaint, Mallory claims management discriminated against her based on color. (Doc. 23). She alleges that, while the SSA terminated her, it retained Ms. Hollings-Fisher, who, she claims, had "lesser training statistics." (Doc. 23). Mallory asserts that

Ms. Hollings-Fisher was given opportunities not offered to her: additional classroom training, a new mentor, and a performance improvement plan two months before Mallory was offered one. (Doc. 23). Furthermore, she alleges that Ms. McLeod handpicked difficult cases for Mallory to process while Ms. Hollings-Fisher received easier cases to process. (Doc. 23). Mallory also claims that after ten months, Ms. McLeod took Ms. Hollings-Fisher off review, while Mallory remained on review and was assigned difficult work from mentors with higher standards than Ms. Hollings-Fisher's mentors. (Doc. 23).

### III. STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)  In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").  The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324.  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir.

1988).  The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury.  *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party.  *Graham*, 193 F.3d at 1282.  The nonmoving party "need not be given the benefit of every inference but only of every reasonable inference."  *Id.*  The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor."  *Anderson*, 477 U.S. at 255.  After both parties have addressed the motion for summary judgment, the court shall grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

## IV. ANALYSIS

**A. No Genuine Issues of Material Fact Exist**

Though Mallory submitted a response to the Motion for Summary Judgment, she did not dispute any of the SSA's facts as set out in the Motion. Pursuant to the Court's Appendix II, Summary Judgment Requirements, all undisputed facts are deemed admitted. The court attempted to match the numbered allegations in Mallory's response to any facts alleged in the Defendant's Motion. However, the court was unable to identify a fact that Mallory was disputing with evidentiary support. The court views submissions from pro se litigants less stringently than parties represented by licensed attorneys, but the court cannot bend the rules of procedure for pro se parties.

The court notes that Mallory often isolates single phrases and statements from larger

reports and letters, taking them out of the context of the natural language. For example, Mallory cites an email to her mentor, Mr. Peoples, regarding a problem in returning work to him because of a foot injury. (Doc. 30 at 17). Mallory alleges the SSA was unwilling to provide accommodation for this issue. However, the email clearly includes a response from Mr. Peoples saying, "If you can't bring them, call me and I'll come get them. I don't want you to hurt yourself." *Id*. Additionally, in her response, Mallory continuously provides 'facts' that are wholly unsupported by the evidence cited, if any is cited at all. For example, Mallory contends that she was the only trainee given a Post Entitlement Technical Expert (PETE) as a mentor, which meant she would be judged "more harshly, critically, and unfairly by an expert." (Doc. 30, ¶ 16). However, no evidence submitted supports the contention that a PETE would review her work in a different manner than another mentor.

The court does not find any material facts to be in genuine dispute between the parties. What one subjectively may believe or feel does not constitute a fact supported by evidence.

**B. Defendant is Entitled to Judgment as a Matter of Law**

When dealing with cases asserting claims of racial discrimination, the Eleventh Circuit requires a plaintiff to prove: "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1322-23 (11th Cir. 2006) (*citing E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)). Defendant argues that Mallory has not met her *prima facie* case because she has failed to prove elements three and four above.

*1. More Favorable Treatment of Similarly Situated Employees*

Mallory claims that Ms. Hollings-Fisher received more favorable treatment because she is light skinned. (doc. 23). However, Mallory cannot show that she and Ms. Hollings-Fisher were similarly situated. To show that employees are similarly situated, Mallory must establish that the employees are "similarly situated in all relevant respects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). The comparator employee "must be nearly identical to [Mallory] to prevent courts from second-guessing a reasonable decision by the employer." *Id.* (citing *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001)).

Mallory and Ms. Hollings-Fisher are not similarly situated because Ms. Hollings-Fisher did not have performance problems nearly identical to those of Mallory. *See* DEX 1, Mallory's Progress Reports and Interview Summaries; *see also* DEX 3, Hollings-Fisher's Performance Records, at 20-64. Ms. Hollings-Fisher struggled initially in her work, but after being put on performance review, she continued to improve until Ms. McLeod recommended she be taken off of review entirely in February 2008. DEX 3, Hollings-Fisher's Performance Records, at 22, 26, and 29-47. Mallory, however, had significant performance difficulties, making procedural errors in the majority of her cases and not making corrections in a timely manner, and thus, could not be released from review as early as Ms. Hollings-Fisher. *See* DEX 1, Mallory's Progress Reports and Interview Summaries. Unlike Hollings-Fisher, Mallory did not show a pattern of continued improvement. On the basis of performance, Mallory cannot prove that she and Ms. Hollings-Fisher were similarly situated. Accordingly, she cannot prove that she meets the third requirement of the Eleventh Circuit *prima facie* case.

*2. Qualified to Do the Job*

The Defendant also asserts that Mallory failed to prove she was qualified to do her job.

The Eleventh Circuit has recognized that "in termination cases, the question of whether the plaintiff was qualified to do the job is not often at issue." *Crapp v. Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001). "[I]n cases where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test of a prima facie case can be inferred." *Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1495 n.2 (11th Cir. 1987) (citing *Pace v. S. Ry. Sys.*, 701 F.2d 1383, 1386 (11th Cir. 1983)). In *Crapp*, the Eleventh Circuit inferred that the employee was qualified to do his job because he had worked as a police officer for ten years before he was terminated. *See Crapp*, 242 F.3d at 1018. Yet, here, Mallory spent less than two years as an employee for the SSA, in training or under performance review during the entire period, and consistently suffered from job performance issues. She has not established that she was qualified to hold the position. Therefore, she failed to meet the fourth element. The court finds that the Plaintiff, Mallory, cannot meet the requirements of a prima facie case.

      *3. Pretext*

Even if Mallory's allegations did meet the elements of a prima facie case for discrimination, the Defendant SSA has presented a "clear and reasonably specific non-discriminatory basis for its actions." *Lane v. Broward Co.*, 411 F.ed. Appx. 272, 275 (11th Cir. 2011). In cases of employment discrimination, if a plaintiff succeeds in proving a prima facie case, the burden of production shifts to the defendant to prove a legitimate, non-discriminatory reason for terminating the plaintiff. This burden is characterized as "exceedingly light." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 770 (11th Cir. 2005). The evidence produced, most of it admitted to by Mallory, shows a pattern of work performance issues that were not corrected

despite months of performance plans and various mentors. This evidence meets the light burden placed upon the SSA.

Because the Defendant has met this burden, the Plaintiff is given an opportunity to rebut this, by a preponderance of the evidence, through showing the reason offered by the Defendant is merely a pretext for the actual discrimination. *Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1305 (11th Cir. 2002). To show pretext, the Plaintiff needs to show reasonable "weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the proffered legitimate reasons." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). The employee needs to show that the proffered reason is not "one that might motivate a reasonable employer" or that it is based on incorrect facts. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

The evidentiary record, as well as Mallory's own admissions, show a clear pattern of work performance issues on Mallory's part. While some gradual improvement was indicated, a reasonable employer could easily conclude that Mallory had failed to demonstrate the ability to be a successful employee. Additional intensive training and prolonged mentoring might have improved Mallory's performance. However, a reasonable employer could determine that the efforts necessary to bring her performance to an adequate level are not worth the time and resources that would be expended. Ms. Hollings-Fisher's performance records indicate steady improvement and a positive outlook on her career on behalf of her mentors. Mallory has not provided any evidence that throws the SSA's proffered legitimate reason for her termination into any doubt.

## V. CONCLUSION

Mallory has not presented sufficient evidence to support her *prima facie* case on her claim of a racially hostile work environment. Additionally, the SSA has provided a legitimate non-discriminatory reason for her termination that Mallory has not shown to be pretextual. The court finds that Defendant's motion for summary judgment is due to be GRANTED.

The court will enter a separate Order consistent with this Memorandum Opinion.

Dated this 3rd day of December, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE